UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------
LONG ISLAND PLASTIC SURGICAL
GROUP, P.C.,

    Plaintiff,

      -against-


UNITEDHEALTHCARE INSURANCE
COMPANY OF NEW YOK, INC.; OXFORD
HEALTH PLANS (NY), INC.; and
UNITEDHEALTHCARE INSURANCE
COMPANY,

    Defendants.
-------------------------------X

MEMORANDUM & ORDER
21-CV-5825(JS)(ST)

APPEARANCES

For Plaintiff:          Roy W. Breitenbach, Esq.
                        Harris Beach Murtha Cullina PLLC
                        333 Earle Ovington Boulevard, Suite 901
                        Uniondale, New York 11553

                        Daniel Robert Lecours, Esq.
                        Harris Beach Murtha Cullina PLLC
                        677 Broadway, Suite 1101
                        Albany, New York 12207

For Defendants:         Ariella Ederi, Esq.
                        Robinson & Cole LLP
                        One Boston Place, 25th Floor
                        Boston, Massachusetts 02108

                        Gregory James Bennici, Esq.
                        Patrick W. Begos, Esq.
                        Robinson & Cole LLP
                        1055 Washington Blvd, 5th Floor
                        Stamford, Connecticut 06901

                        Michael H. Bernstein, Esq.
                        Robinson & Cole LLP
                        666 Third Avenue, 20th Floor
                        New York, New York 10017

SEYBERT, District Judge:

On October 19, 2021, Plaintiff Long Island Plastic Surgical Group, P.C., (hereinafter, "Plaintiff" or "Practice") commenced this Employee Retirement Income Security Act ("ERISA") action against Defendants UnitedHealthcare Insurance Company of New York, Inc., Oxford Health Plans (NY), Inc., and United Healthcare Insurance Company (together, "Defendants" or "United"). (See generally, Compl., ECF No 1.)  Plaintiff asserted seven claims, including: (1) payment of ERISA benefits under 29 U.S.C. § 1132(a)(1)(B); (2) ERISA equitable relief under 29 U.S.C. § 1132(a)(3); and common-law claims of (3) breach of health plans as assignee; (4) implied-in-fact contract; (5) unjust enrichment; (6) tortious interference with contracts between the Practice and its patients; and (7) breach of the health plans as third-party beneficiary. (Id. ¶¶ 67-126.)

On July 1, 2022, Defendants filed a pre-motion conference letter regarding their anticipated motion to dismiss the Complaint. (See ECF No. 24.)  On September 14, 2022, Plaintiff filed its Amended Complaint as a matter of right, stating allegations in support of the same seven claims. (See generally, Am. Compl. ("AC"), ECF No. 29.)  On October 31, 2024, Defendants filed a renewed pre-motion conference request for a motion to dismiss the Amended Complaint. (See ECF No. 56.)  Plaintiff

opposed that request, seeking leave to file a second amended complaint. (See ECF No. 59.) Thereafter, the Court set a briefing schedule for Plaintiff's motion to amend the complaint (hereinafter, "Motion"). (See Dec. 11, 2024 Elec. Order.)

On January 22, 2025, Plaintiff filed its Motion. (See Mot., ECF No. 63; see also Support Memo, ECF No. 63-9; Proposed Second Am. Compl. ("PSAC"), ECF No. 63-2.) On April 4, 2025, Defendants filed their Opposition to the Motion. (See Opp'n, ECF No. 65.) On May 23, 2025, Plaintiff filed its Reply in further support of its Motion. (See Reply, ECF No. 70.)

On August 29, 2025, Magistrate Judge Steven Tiscione (hereinafter, "Magistrate Judge" or "Judge Tiscione") issued a Report and Recommendation (hereinafter, "Report" or "R&R") recommending the Court grant in part and deny in part Plaintiff's Motion as follows: (1) "The [P]SAC Plausibly States a Valid ERISA Benefits Claim for all Plans that Do NOT Contain an Anti-Assignment Provision" (R&R at 8-12); (2) "[P]SAC Plausibly States a Valid ERISA Benefits Claim for Twelve of the Nineteen Patients whose Plans Contain an Anti-Assignment Provision" (id. at 12-16); (3) "Plaintiff's [P]SAC Fails to State a Plausible Claim for Recovery for those Claims Arising Under Medicare Advantage Plans [(hereinafter, "MA Plans")]" (id. at 17-18); (4) "Plaintiff's [P]SAC States a Plausible Claim for Recovery Under Plans That Do NOT Cover Out-of-Network Services" (id. at 18-20); (5)

"Plaintiff's State Law Claims for Breach of Implied-in-Law Contract and Unjust Enrichment under ERISA-governed Plans are Preempted" (id. at 21); (6) "Plaintiff's [P]SAC Plausibly States a Claim for Breach of Contract for Claims under Plans that are NOT Governed by ERISA or MA, or Contain an Anti-Assignment Provision" (id. at 22-23); (7) "Plaintiff's [P]SAC Fails to State an Implied-in-Fact Contract Claim" (id. at 23-24); and (8) "Plaintiff's [P]SAC Fails to State a Claim for Unjust Enrichment" (id. at 24).

On September 26, 2025, both Plaintiff and Defendants filed objections to Judge Tiscione's R&R. (Pl.'s Objs., ECF No. 76; Defs.' Objs., ECF No. 75.) On October 24, 2025, Defendants responded to Plaintiff's objections (Defs.' Resp. to Objs., ECF No. 80), and Plaintiff responded to Defendants' objection (Pl.'s Resp. to Objs., ECF No. 79). On November 4, 2025, the parties jointly requested leave to file replies in support of their respective objections (see ECF No. 82). The Court denied this request. (See Nov. 5, 2025 Elec. Order.)

For the reasons stated herein: Plaintiff's objections are OVERRULED in part and SUSTAINED in part; Defendants objection is OVERRULED; and the R&R is ADOPTED in part. Therefore, Plaintiff's Motion to Amend is GRANTED in part and DENIED in part, consistent with this Order.

4

BACKGROUND

I.    Factual and Procedural Background

The Court presumes the parties' familiarity with, adopts, and incorporates herein, the factual and procedural background as set forth in the R&R. (R&R at 1-4.) See generally Sali v. Zwanger & Pesiri Radiology Grp., LLP, No. 19-CV-0275, 2022 WL 819178, at *1 (E.D.N.Y. Mar. 18, 2022) (where no party challenges magistrate judge's recitation of the factual and procedural background of the case, adopting and incorporating same into court's order).

II.   Judge Tiscione's R&R

Judge Tiscione's Report is summarized as follows:

First, Judge Tiscione recommended this Court find Plaintiff's First Cause of Action in its PSAC plausibly states a valid ERISA Benefits Claim for all plans except for the seven plans containing anti-assignment provisions that include prohibitive clauses or personal rights clauses. (See R&R at 8-16.)

Second, Judge Tiscione recommended this Court find Plaintiff's PSAC fails to state a claim for recovery for claims arising under MA Plans because the PSAC fails to allege Plaintiff exhausted the five-level administrative review process before filing the instant action. (See id. at 17-18.)

Third, Judge Tiscione recommended this Court find Plaintiff's PSAC states a plausible claim for recovery under plans

5

that do not cover out-of-network services because the PSAC alleges these plans require reimbursement to out-of-network providers if those providers render emergency services to a plan enrollee, and Judge Tiscione found the spinal closure surgeries could plausibly qualify as emergency services as "treatment[s] to stabilize the patient."  (See id. at 18-20 (cleaned up).)

Fourth, Judge Tiscione recommended this Court find Plaintiff's state law claims for breach of implied-in-law contract and unjust enrichment under ERISA-governed plans to be preempted because it is "undisputed that the [P]SAC's implied contract and unjust enrichment claims . . . 'relate to' employee benefit plans and are therefore expressly preempted by ERISA."  (See id. at 21.)

Fifth, Judge Tiscione recommended this Court find the PSAC "plausibly states a claim for breach of contract for plans not governed by ERISA or MA, or contain an Anti-Assignment clause." (See id. at 22-23.)

Sixth, Judge Tiscione recommended this Court find Plaintiff's PSAC fails to state an implied-in-fact contract claim because "Plaintiff pleads this claim in the alternative and concedes that this cause of action would only come into play if the Court were to determine Plaintiff lacked standing to assert ERISA or breach of contract claims."  (See id. at 23-24.)

Last, Judge Tiscione recommended this Court find Plaintiff's PSAC fails to state a claim for unjust enrichment

because: (1) Defendants accrued no benefit from Plaintiff's performance of the spinal procedures; (2) Plaintiff pleads this claim in the alternative; and (3) Plaintiff concedes this cause of action would only come into play if the Court were to determine Plaintiff lacked standing to assert ERISA or breach of contract claims. (See id. at 24.)

III. Plaintiff's Objections to the R&R

Plaintiff asserts five primary objections to Judge Tiscione's recommendations.

First, Plaintiff objects to Judge Tiscione's recommendation that Plaintiff's First Cause of Action in its PSAC plausibly states a valid ERISA Benefits Claim for all plans except for seven that contain anti-assignment provisions with prohibitive clauses or personal rights clauses. (See Pl.'s Objs. at 9-12.) It asserts the PSAC contains sufficient factual allegations to render it plausible that Defendants waived the anti-assignment clauses here. (Id.)

Second, Plaintiff objects to Judge Tiscione's recommendation that this Court dismiss all claims arising under MA. (Id. at 13-14.) Plaintiff instead requests this Court: (a) determine a plausible claim for recovery regarding the MA Plan claims was stated, notwithstanding that Plaintiff has not exhausted all administrative remedies, and (b) imposes a stay of

these claims while Plaintiff exhausts its administrative remedies. (Id.)

Third, Plaintiff objects to Judge Tiscione's recommendation that this Court dismiss the state law claim for unjust enrichment as preempted by ERISA based on certain case law from the Second Circuit and Supreme Court. (Id. at 14-16.)

Fourth, Plaintiff objects to Judge Tiscione's recommendation that "the [PSAC] states a claim for breach of contract for claims under plans not governed by ERISA or [MA] rules only if the plans lack an anti-assignment provision." (Id. at 16-17.) Plaintiff argues "[w]hether the plans contain an anti-assignment provision has no bearing on the viability of the Practice's breach of contract claims relating to non-ERISA and non-[MA] plans." (Id.)

Last, Plaintiff objects to Judge Tiscione's recommendation that the PSAC does not state a claim for unjust enrichment since the "no benefit" argument does not apply because emergency services are at issue and Plaintiff has otherwise sufficiently stated an unjust enrichment claim. (Id. at 17-19.)

In response, Defendants argue: (1) Judge Tiscione properly recommended dismissal of claims with anti-assignment provisions based on clear case law (Defs.' Resp. to Objs. at 8-15); (2) Plaintiff disputes Judge Tiscione's finding that it needs to exhaust the five-level administrative review process for its

8

claims for benefits under MA, and Plaintiff also never before asked for the relief of staying these claims until Plaintiff completes the administrative process (id. at 15-17); (3) Plaintiff's unjust enrichment claim is preempted by ERISA as codified via statute, and regardless, case law Plaintiff cites to is inapposite (id. at 17-21); (4) Judge Tiscione properly recommended dismissal of breach of contract claims for plans that contain an anti-assignment clause because "[t]here is no question that anti-assignment clauses preclude assignment of state law breach of contract claims along with ERISA claims" (id. at 21); and (5) Judge Tiscione properly recommended dismissal of the unjust enrichment claim notwithstanding Plaintiff's contention the services at issue were emergency services since, not only did Plaintiff raise this for the first time in its Reply, but Plaintiff also misrepresents the allegations in its PSAC, which includes mere conclusory statements about emergency services (id. at 22-24).

The Court finds Plaintiff's objections to be without merit, except for its last objection, and addresses each, in turn, below.

## IV. Defendants' Objection to the R&R

Defendants object to Judge Tiscione's recommendation that Plaintiff has plausibly alleged a valid assignment of benefits for ERISA standing for plans that do not contain an anti-assignment provision. (See Defs.' Objs. at 7-13.)  In support of their

9

objection, Defendants first argue "established precedent in this Circuit confirms that a valid assignment must do more than give the purported assignee the right to collect or receive money or benefits; [instead], a valid assignment must expressly convey ownership of the claim for the money or benefits."  (Id. at 9.) Second, Defendants argue the Magistrate Judge's citation to Montefiore Medical Center v. Teamsters Local 272, 642 F.3d 321, 333 (2d Cir. 2011) was inapposite because it "did not consider the language of any assignment, and certainly did not hold that an assignment of 'monies and/or benefits' is adequate to create standing."  (Id. at 11.)

In response, Plaintiff contends the cases Defendants cite to are readily distinguishable and "do little to overcome [the] overwhelming weight of authority [which] support[s] Magistrate Judge Tiscione's determination." (Pl.'s Resp. to Objs. at 5-11.)

The Court finds Defendants' objection to be without merit and addresses it below.

DISCUSSION

I.    Legal Standards

A. Report and Recommendation

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); see also FED. R. CIV. P. 72(b)(3).

10

The district judge must evaluate proper objections de novo. See Nambiar v. Cent. Orthopedic Grp., LLP, 158 F.4th 349, 358 (2d Cir. 2025) (citing Arista Recs., LLC v. Doe 3, 604 F.3d 110, 116 (2d Cir. 2010)). A proper objection must: (1) be timely; (2) be specific; and (3) "may not raise new arguments not previously made before the magistrate judge." See id. at 359. Even if a party's objections repeat an argument previously raised before the magistrate judge, if that objection takes issue with a specific legal conclusion in the report and recommendation, the court must review that objection de novo. Id. at 361 ("[A] litigant objecting to an R&R . . . must lodge a specific objection to some specific aspect of the R&R. But the objection not only may, but often must, repeat arguments that were previously raised. When a timely filed objection raises and properly briefs arguments previously rejected by the magistrate judge, the district judge must review those arguments de novo."). However, where objections not proper, such as "nonspecific" or "merely perfunctory" objections, the court reviews the report and recommendation only for clear error. See id. Moreover, the court need not review the findings and conclusions to which no proper objection has been made. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

Courts conducting de novo review of specific written objections to a report and recommendation are "not require[d] . . . to conduct a new hearing; rather, it mandates that the

[c]ourt give fresh consideration to those issues which specific objections have been made." <u>Jarvis v. Funny Bone Comedy Club</u>, No. 25-CV-0645, 2025 WL 3653544, at *1 (N.D.N.Y. Dec. 17, 2025) (quoting <u>A.V. by Versace, Inc. v. Gianni Versace, S.p.A.</u>, 191 F. Supp. 2d 404, 406 (S.D.N.Y. 2002)).  Courts conducting clear error review of improper objections find clear error present "when upon review of the entire record, the court is left with the definite and firm conviction that a mistake has been committed." <u>Merritt v. Tioga County Dep't of Soc. Servs.</u>, No. 25-CV-0695, 2025 WL 3644233, at *1 (N.D.N.Y. Dec. 16, 2025) (quoting <u>Rivera v. Fed. Bureau of Prisons</u>, 368 F. Supp. 3d 741, 744 (S.D.N.Y. 2019)).

Additionally, "[i]t is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." <u>Tevac, Inc. v. Dynamics eShop, Inc.</u>, No. 19-CV-3650, 2022 WL 4483439, at *3 (E.D.N.Y. Sept. 27, 2022) (quoting <u>Zhao v. State Univ. of N.Y.</u>, No. 04-CV-0210, 2011 WL 3610717, at *1 (E.D.N.Y. Aug. 15, 2011)); <u>see also</u> <u>Page v. Ellenoff Grossman & Schole LLP</u>, No. 22-CV-4453, 2023 WL 4841916, at *1 (S.D.N.Y. July 28, 2023) ("WHEREAS the Court need not consider arguments contained in the objections that were not raised initially before the magistrate judge . . . ."), <u>aff'd</u>, No. 23-1199, 2024 WL 4195137 (2d Cir. Sept. 16, 2024).

B. Motion to Amend

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, courts have discretion to allow parties to amend their pleadings "when justice so requires." FED. R. CIV. P. 15(a)(2); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("Under Fed. R. Civ. P. Rule 15(a), leave to amend shall be freely given when justice so requires." (citation modified)); Amaya v. Roadhouse Brick Oven Pizza, Inc., 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("A court should freely give leave when justice so requires, and such leave is in the court's discretion." (citation modified)). The amendment standard is liberal, permitting plaintiffs "to assert matters that were overlooked or were unknown at the time of the original complaint or answer." RCX I, LLC v. Pitter-Nelson, No. 11-CV-3513, 2014 WL 5809514, at *5 (S.D.N.Y. Nov. 6, 2014) (citation modified).

Where, however, there is "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment," a Rule 15 motion should be denied. Amaya, 285 F.R.D. at 253; see also Francisco v. Abengoa, S.A., 559 F. Supp. 3d 286, 310 (S.D.N.Y. 2021) ("[A] motion to amend should be denied only if the moving party has unduly delayed or acted in bad faith, the opposing party will be unfairly prejudiced if leave

13

is granted, or the proposed amendment is futile." (quoting Agerbrink v. Model Serv. LLC, 155 F. Supp. 3d 448, 452 (S.D.N.Y. 2016))).

"The party opposing a motion to amend bears the burden of establishing that the amendment should be denied." Baptiste v. Suffolk County, No. 19-CV-0042, 2022 WL 1224570, at *4 (E.D.N.Y. Apr. 26, 2022); see also Joinnides v. Floral Park-Bellerose Union Sch. Dist., No. 12-CV-5682, 2015 WL 1476422, at *9 (E.D.N.Y. Mar. 31, 2015) ("With respect to the Rule 15(a) factors, the party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial or futile." (citation modified)).

II. Analysis

A. The Objections Warrant *De Novo* Review[1]

Turning to both sets of objections, unless indicated otherwise below by the Court, the Court finds the objections to be proper because they were timely, specific, and did not include new arguments that were never previously made before Judge Tiscione. Thus, the Court reviews Judge Tiscione's Report de novo.

---

[1] Because there have been no objections filed by any parties as to Judge Tiscione's following recommendations, upon clear error review, the Court adopts said recommendations in their entirety; therefore: (1) Plaintiff's PSAC plausibly states a claim for recovery for plans that do not cover out-of-network services (R&R at 18-20); (2) Plaintiff's implied-in-law contract claim is dismissed (id. at 21); and (3) Plaintiff's implied-in-fact contract claim is dismissed (id. at 23-24).

B. Plaintiff's Objections

    1. Objection 1: The PSAC Contains Sufficient Factual Allegations to Render it Plausible Defendants Waived the Anti-Assignment Clauses

As its first objection, Plaintiff asserts the Magistrate Judge erred by recommending "for the claims involving the other 7 patients . . . the patients' plans contain enforceable anti-assignment provisions that defeat the [Plaintiff's] standing to assert an ERISA benefit claim[] as the patients' assignee." (Pl.'s Objs. at 9.)  Plaintiff claims it is "plausible that the health plans' actions waived the anti-assignment clauses or estopped the plans from asserting them."  (Id.)

First, Plaintiff argues that while it is true that courts rely upon the existence of anti-assignment clauses in plan documents to dismiss claims for lack of standing, it is also true "that this [c]ourt has denied motions to dismiss at the pleading stage where the health care providers' complaints contained sufficient factual allegations to render it at least plausible that the health plans' actions waived the anti-assignment clauses or is estopped from asserting them."  (See id. at 9.)  Plaintiff compares its PSAC here to those in cases like Da Silva Plastic & Reconstructive Surgery, P.C. v. Cigna Health & Life Insurance Company, No. 23-cv-0585, 2025 WL 240917 (E.D.N.Y. Jul 15, 2024), because its PSAC "contains sufficient factual allegations to render it at least plausible that the health plans' actions waived

15

the anti-assignment clause or is estopped from asserting them."
(Id. at 10.)   Specifically, Plaintiff argues that alleged prior
conduct of Defendants rises to the level of waiver.  For example,
during calls, "United never raised any objection to the Practice's
claimed status as a beneficiary or the existence of anti-assignment
clauses in the plan documents."  (See id. (citing PSAC ¶¶ 63, 66-
67).)   As another example, when Plaintiff submitted claims for
reimbursement to United, "United responded to these claim
submissions . . . [and not once] objected to the Practice's claimed
status as an assignee of the beneficiary or the existence of an
anti-assignment clause."  (See id. at 11 (citing PSAC ¶¶ 67, 70,
93).)   And when Plaintiff followed up on claims submitted to
United, "United, not once, refused to recognize or interact with
the Practice as the beneficiary's assignee and authorized
representative."  (See id. (emphasis in original) (citing PSAC ¶¶
66-74, 85-90).)

     It would be remiss of this Court not to note that
Plaintiff's counsel lodged an objection in another case before
this Court just two months ago that is identical to the above
objection, save for changes to the names of the parties and
citations to the PSAC.  Compare Neurological Surgery Prac. of Long
Island, PLLC v. Cigna Health & Life Ins. Co., No. 21-CV-1549
(JS)(JMW), ECF No. 72, at 7-9 (E.D.N.Y. July 25, 2025), with Long
Island Plastic Surgical Group, P.C. v. UnitedHealthcare Insurance

16

Company of New York Inc., et al., No. 21-CV-5825 (JS)(ST), ECF No. 76, at 9-11 (E.D.N.Y. Sept. 26, 2025). The Court overruled that objection. Neurological Surgery Prac. of Long Island, PLLC v. Cigna Health & Life Ins. Co., No. 21-CV-1549 (JS)(JMW), 2025 WL 2778389, at *6-7 (E.D.N.Y. Sept. 30, 2025) (hereinafter, "Neurological Surgery"). Thus, the Court is not convinced the identical objection in this case is a proper, specific objection. Regardless, even upon a de novo review, the Court overrules the same objection here, for the same reasons articulated in its September 30, 2025 Memorandum & Order in Neurological Surgery, which decision and rationale this Court adopts and incorporates herein:

> However, as Judge Wicks astutely observed in his Report, for a waiver to be effective, "there must be clear intent to relinquish a known right." (See R&R at 13 (quoting Neurological Surgery, P.C. v. Aetna Health Inc., 511 F. Supp. 3d 267, 285-86 (E.D.N.Y. 2021)) (citation modified).) This Court agrees. As Judge Cogan's recent decision in Central Orthopedic Group, LLP v. Aetna Life Insurance Company, No. 24-CV-7014, 2025 WL 2549995 (E.D.N.Y. Sept. 4, 2025) (hereinafter, "Central Orthopedic I") explains, which rationale this Court adopts and incorporates herein:

>> Under this standard, the complaint fails to state an ERISA claim upon which relief can be granted. First, plaintiff appears to recognize that the anti-assignment clause means what it says – a third party like plaintiff cannot assert the rights of a patient to payment or reimbursement from Aetna under the policy. Instead, plaintiff alleges that by participating in the claims administration process for

17

claims submitted by plaintiff (instead of rejecting those claims out of hand), or by partially paying some of plaintiff's claims, Aetna has waived the restriction in the anti-assignment clause. But those actions or inactions do not constitute a waiver under the law.

Substantial and recent authority within this district and the Southern District of New York on indistinguishable facts recognizes this. The same lawyer representing plaintiff here made the same arguments in favor of waiver in Gordon Surgical Group, P.C. v. Empire HealthChoice HMO, Inc., 724 F. Supp. 3d 158 (S.D.N.Y. 2024), but all were rejected. In Gordon, the plaintiff contended that the insurer had provided "written consent" to the assignment of benefits by engaging in correspondence with the plaintiff. Noting that "waiver of a contract right must be proved to be intentional, [and that] the defense of waiver requires a clear manifestation of an intent to relinquish a known right," id. at 172 (quoting Beth Israel Med. Ctr. v. Horizon Blue Ross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 585 (2d Cir. 2006)) (cleaned up), the Gordon court pointed out the absence of any allegation in the complaint that the defendant had delivered a letter stating, in substance, "we hereby waive the anti-assignment clause." The fact that the insurer had engaged in communications and administrative proceedings with the plaintiff concerning its claims simply showed a "willingness to communicate directly with Plaintiffs to some extent," and did not "constitute 'written consent' to the assignment of benefits." Gordon, 724 F. Supp. 3d at 172 (quoting R&R). See also Beth Israel, 448 F.3d at 585 ("mere silence, oversight or thoughtlessness in failing to object . . . will not support a finding of waiver" (quotation and

18

>           citation    omitted)); <u>Neurological</u>
>           <u>Surgery, P.C. v. Aetna Health Inc.</u>, 511
>           F. Supp. 3d 267, 286 (E.D.N.Y. 2021)
>           (although  the  provider  "never  once
>           pointed to the anti-assignment language
>           to  deny  or  underpay  any  claim,"  its
>           "inaction  does  not  constitute  waiver"
>           (cleaned up)).
>
>           <u>Id.</u>  Therefore, it was not clear error for Judge
>           Wicks to determine that prior conduct, without any
>           intentional acknowledgment on Cigna's behalf, was
>           not enough to constitute waiver here; in fact, as
>           evidenced by the above block quote, Judge Wicks'
>           Report is in line with myriad other courts in this
>           district and the Southern District of New York.

<u>Neurological Surgery</u>, 2025 WL 2778389, at *6-7.

        Further,  the  Court  declines  to  give  consideration  to
Plaintiff's  objection  that  "this  case  is  factually  like  [the]
<u>Productive MD</u>  [case],  where  the  court  found  waiver  plausible  at
the  pleading  stage."  (<u>See</u>  Pl.'s  Objs.  at  12.)   Not  only  is  this
case  not  binding  upon  this  Court,  but  it  holds  little  to  no
persuasive  value,  as  it  is  a  2013  case  from  the  Middle  District  of
Tennessee.   Moreover,  Plaintiff  fails  to  bring  this  case  and  its
related  argument  before  the  Magistrate  Judge,  which  it  very  well
could  have  done.    <u>Tevac,  Inc.</u>,  2022  WL  4483439,  at  *3  ("It  is
established  law  that  a  district  judge  will  not  consider  new
arguments  raised  in  objections  to  a  magistrate  judge's  report  and
recommendation  that  could  have  been  raised  before  the  magistrate
but  were  not."  (quoting  <u>Zhao</u>,  2011  WL  3610717,  at  *1));  <u>see  also</u>
<u>Page</u>, 2023 WL 4841916, at *1.

Thus, upon *de novo* review, this Court ADOPTS Judge Tiscione's recommendation and OVERRULES this objection.

    2. <u>Objection 2: The Claims Relating to the MA Plans Have Been Sufficiently Alleged but Should Have Been Stayed Pending the Practice's Exhaustion of Administrative Remedies</u>

As its second objection, Plaintiff contends that given the Magistrate Judge found the only deficiency with respect to the MA Plan claims was the failure to exhaust administrative remedies, this Court should not dismiss those claims, but instead should stay those claims, "to permit the Practice to exhaust its administrative remedies under the Medicare regulations." (Pl.'s Objs. at 13-14.)  Upon *de novo* review, Plaintiff's objection is unavailing.

First, Plaintiff has not stated a plausible claim for recovery for those claims arising under the MA Plans because the Medicare Act contains an *express* preemption clause, as Judge Tiscione recommended. (R&R at 17.)  That preemption clause states: "The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part."  42 U.S.C. § 1395w-26(b)(3); <u>see also</u> <u>Cent. Orthopedic Grp., LLP v. Aetna Life Ins. Co.</u>, No. 24-

CV-7173, 2025 WL 2614971, at *1 (E.D.N.Y. Sept. 10, 2025) (hereinafter, "Central Orthopedic II").

Second, the PSAC does not allege Plaintiff exhausted the requisite five-level administrative review process for MA Plans that must occur before Plaintiff can file suit. See 42 U.S.C. § 1395w-22(g). While Plaintiff attempts to argue "it is the responsibility of the Medicare Advantage organizations – here United – to implement and oversee the appeals and grievance process provided for Medicare Advantage disputes" (Pl.'s Objs. at 13), this Court does not agree. "After an adverse determination by the Medicare Appeals Council, and only then, can a claimant seek review of the Appeals Council's determination in federal district court." Central Orthopedic II, 2025 WL 2614971, at *3 (first citing 42 U.S.C. § 1395w-22(g)(5); then citing 42 C.F.R. § 422.612); see also Heckler v. Ringer, 466 U.S. 602, 614-15 (1984) ("The third sentence of 42 U.S.C. § 405(h) . . . provides that [42 U.S.C.] § 405(g)[] is the sole avenue for judicial review for all claims arising under the Medicare Act." (citation modified)).

Plaintiff requests that, under the circumstances, this Court stay these claims to permit Plaintiff to exhaust its administrative remedies. (See Pl.'s Objs. at 14). Plaintiff's aforementioned request fails for multiple reasons. First, as Defendants correctly contend, "Plaintiff never asked for this relief in its motion to amend. Rather, it suggested, in its reply

21

only, that the 'Court should dismiss [the] [MA Plan] related claims with leave to recommence after the Medicare Advantage process is concluded.'" (Defs.' Resp. to Objs. at 16 (quoting Reply at 12-13).) Thus, because Plaintiff had the opportunity to bring this "stay" argument before the Magistrate Judge, and failed to do so, it need not be considered here by this Court. Tevac, Inc., 2022 WL 4483439, at *3 (quoting Zhao, 2011 WL 3610717, at *1)); see also Page, 2023 WL 4841916, at *1.

Second, even though the Court need not consider this argument any further, it would be remiss not to highlight that all the cases Plaintiff cites to in its Objections to support this request are instances where courts stayed the entire case, not just certain causes of action. (See Pl.'s Objs. at 14 (first citing Washington v. Barr, 925 F.3d 109, 121-22 (2d Cir. 2019); then citing Wegmann v. Young Adult Inst., Inc., No. 15-CV-3815, 2016 WL 8711557, at *7 (S.D.N.Y. Aug. 5, 2016); then citing Prince v. Am. Airlines, No. 10-CV-8792, 2011 WL 2534965, at *2 (S.D.N.Y. Jun. 24, 2011)).) To do so here and now would be prejudicial to Defendants.

Third, and relatedly, from a judicial efficiency lens, staying certain causes of actions while letting others proceed would be highly inefficient and cumbersome.

Last, as discussed supra, the Court does not find Plaintiff has stated a plausible claim for recovery for these

claims arising under the MA Plans because the Medicare Act contains an express preemption clause. Therefore, the request for a stay is DENIED, and those specific claims are DISMISSED.

Thus, upon _de novo_ review, this Court ADOPTS Judge Tiscione's second recommendation and OVERRULES this objection.

3. Objection 3: Under _Rutledge_, the Practice's Unjust Enrichment Claim Against ERISA-Governed Plans is Not Preempted as to Those Claims for Which the Court Determines the Practice Lacks Standing to Assert an ERISA Benefits Claim as its Patient's Assignee

As its third objection, Plaintiff alleges the Magistrate Judge's recommendation that its state law claim for unjust enrichment against ERISA-governed plans is preempted is incorrect because of the Supreme Court's decision in Rutledge v. Pharmaceutical Care Management Association, 592 U.S. 80, 86-89 (2020), and other case law. (See Pl.'s Objs. at 14-16.)

First, Plaintiff alleges, in McCulloch Orthopaedic Surgical Services v. Aetna, 857 F.3d 141, 143-44 (2d Cir. 2017), the Second Circuit held that plans cannot use ERISA as both a sword and shield. (See id. at 15.) Plaintiff's reliance on McCulloch is inapposite. As this Court explicated in Neurological Surgery, where Plaintiff's counsel brought the same objection:

> The facts and procedural posture of the McCulloch case do not track the facts and the procedural posture here. In McCulloch, the Second Circuit (1) vacated the district court's order denying plaintiff's motion to remand and dismissing plaintiff's complaint;

> and (2) instructed the district court to further remand the case to New York state court. See McCulloch Orthopaedic Surgical Servs., 857 F.3d at 152. The district court had dismissed the plaintiff's complaint entirely without recourse to bring its claims in state court; the Second Circuit found that dismissal an "unjust and anomalous" outcome with plaintiff being "barred from pursuing state-law claims in state court on preemption grounds and from pursuing an ERISA claim in federal court for lack of standing" thereby leaving the plaintiff "without a remedy to enforce promises of payment made by an insurer." See id. at 148. In stark contrast, here, many of Plaintiff's claims survive; thus, a potential remedy still exists for Plaintiff to enforce the alleged promises of payment made by [United].

Neurological Surgery, 2025 WL 2778389, at *7. That decision and rationale is adopted and incorporated herein.

Second, Plaintiff argues that rejecting ERISA preemption is also consistent with the Supreme Court of the United States' decision in Rutledge v. Pharmaceutical Care Management Association, 592 U.S. 80, 86-89 (2020). (See Pl.'s Objs. at 15.) However, Plaintiff makes an argument regarding Rutledge, which it alleges is "[t]he leading ERISA express preemption case," for the first time in its underlying Reply brief. (See Reply at 14.) And "issues raised for the first time in a reply brief are generally deemed waived." Thompson v. Corizon Health, Inc., No. 18-CV-7139, 2021 WL 10725060, at *2 (S.D.N.Y. Apr. 14, 2021) (quoting Tardif v. City of N.Y., No. 19-CV-1360, 2021 WL 1030973, at *7 n.7 (2d Cir. Mar. 18, 2021)). And, again, "[i]t is established law that a

24

district judge <u>will not consider new arguments raised in objections</u> to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." <u>Tevac, Inc.</u>, 2022 WL 4483439, at *3 (quoting <u>Zhao</u>, 2011 WL 3610717, at *1); <u>see also</u> <u>Page</u>, 2023 WL 4841916, at *1.   Thus, this argument about the application of the <u>Rutledge</u> case in support of Plaintiff's objections will not be considered now.   And for the avoidance of doubt, if the Court did consider this argument, it would agree with Defendants' characterization of the <u>Rutledge</u> case: "[<u>Rutledge</u>] was a challenge to a state law mandating that pharmacy benefit managers pay certain minimum reimbursement rates for pharmaceuticals. That is far different than Plaintiff's contention that United must pay the benefits Plaintiff seeks for services provided to members [o]f specific ERISA plans that United allegedly administers."  (Defs.' Resp. to Objs. at 19.)[2]

Therefore, upon <u>de novo</u> review, this Court ADOPTS Judge Tiscione's recommendation and OVERRULES this objection.

---

[2] To the extent Plaintiff makes additional arguments in support of this objection, the undersigned need not discuss all the points raised by the parties in their submissions. It is well-settled that "there is no requirement for a court to specifically address each and every argument raised by a party in papers filed with the Court." <u>Hallmark Licensing, LLC v. Dickens, Inc.</u>, No. 17-CV-2149, 2020 WL 6157007, at *7 (E.D.N.Y. Oct. 21, 2020) (quoting <u>Miller v. Metro. Life Ins. Co.</u>, No. 17-CV-7284, 2018 WL 5993477, at *5 n.5 (S.D.N.Y. Nov. 15, 2018) (further citations omitted)). "By extension, neither is a court required to address each and every case cited by a party in support of its position." <u>Id.</u>

4. <u>Objection 4: The PSAC Plausibly States a Claim for Breach of Contract for Claims Under Plans Not Governed by ERISA or MA Rules Regardless of Whether the Plans at Issue Contain Anti-Assignment Provisions</u>

As its fourth objection, Plaintiff contends its PSAC plausibly states a claim for breach of contract for claims under plans not governed by ERISA or MA rules, regardless if those plans contain anti-assignment provisions, because "[w]hether the plans contain an anti-assignment provision has no bearing on the viability of the Practice's breach of contract claims relating to non-ERISA and non-[MA] plans."  (Pl.'s Objs. at 16-17.)

First, as to Plaintiff's part of this objection that asserts "[w]hether the plans contain an anti-assignment provision has no bearing on the viability of the Practice's breach of contract claims relating to non-ERISA and non-Medicare Advantage plans" (see <u>id.</u>), the Court is not convinced this objection warrants <u>de novo</u> review; and instead, said objection to this recommendation should be reviewed for clear error, as it is general and conclusory and with no citation to case law (see <u>Nambiar</u>, 158 F.4th at 358).  However, regardless of the review standard applied, Plaintiff's objection must fail.  The Second Circuit has stated as much in <u>Murphy Medical Associates, LLC v. Yale University</u>: "<u>[An] anti-assignment provision [in the plan document] dooms its breach-of-contract claim</u>."  120 F.4th 1107, 1114 (2d Cir. 2024) (emphasis added).

26

Second, as to Plaintiff's renewed waiver argument, that objection is similarly without merit, as already addressed <u>supra</u>. (<u>See</u> <u>supra</u> Section II.B.i.)

Accordingly, upon <u>de novo</u> review, this Court ADOPTS Judge Tiscione's fifth recommendation and OVERRULES this objection.

     5. <u>Objection 5: Because the Claims at Issue All Concern Emergency Services Provided by the Practice to Treat an Emergency Medical Condition, the Practice has Sufficiently Stated a Claim for Unjust Enrichment</u>

As its fifth objection, Plaintiff contends the Magistrate Judge was incorrect to recommend Plaintiff's PSAC fails to state a claim for unjust enrichment since, while the Magistrate Judge concluded the claim was legally insufficient because the plan enrollees received a benefit, and not United, "New York courts only accept this 'no benefit' argument when non-emergency services are involved"; here, by contrast, there were emergency services involved. (Pl.'s Objs. at 17-19.)

Upon <u>de novo</u> review, the Court agrees with Plaintiff. While Defendants argue "Plaintiff did not make this argument in support of its motion for leave to amend" and only made it in its Reply papers, and cites to case law that stands for the proposition that "[i]ssues raised for the first time in a reply brief are generally deemed waived," (Defs.' Resp. to Objs. at 22-23 (quoting <u>Conn. Bar Ass'n v. United States</u>, 620 F.3d 81, 91, n.13 (2d Cir.

2010)), that is of no moment here.  It is apparent Plaintiff raised this specific argument about emergency services in its Reply in response to an argument made in the Defendants' Opposition: "United contends that this claim is legally insufficient because it only alleges that its enrollees, not United, received the benefit of the Practice's services and, therefore, the Practice cannot maintain its unjust enrichment claim. Even assuming this is the case, this "no benefit" argument has only been accepted when non-emergency services are involved." (See Reply at 16.)  Replies are permitted for such a purpose.  See, e.g., Alvarez v. Experian Info. Sols., Inc., 661 F. Supp. 3d 18, 23 (E.D.N.Y. 2023) ("It is well-established that arguments may not be made for the first time in a reply brief . . . but that rule enjoys an exception – reply papers may properly address new material issues raised in opposition papers so as to avoid giving unfair advantage to the answering party." (citation modified)).

Plaintiff's objection accurately states the law on this specific issue regarding unjust enrichment, "no benefit," and emergency as opposed to non-emergency situations.  "New York courts have drawn a clear distinction between unjust enrichment cases involving emergency medical services, and those involving elective medical services." AA Med., P.C. v. Centene Corp., No. 21-CV-5363, 2023 WL 5670682, at *4 (E.D.N.Y. June 30, 2023).  As is further

explained in <u>Emergency Physician Services of New York v. UnitedHealth Group, Inc.</u>:

> In <u>Wellcare</u>, "an apparent case of first impression," a New York trial court concluded that where "a hospital is required by law to treat patients in an emergency room, an insurance company is unjustly enriched if it fails to pay the hospital in full for the costs incurred in rendering the necessary treatment to the insurer's enrollees." 937 N.Y.S.2d at 543, 545. The <u>Wellcare</u> court contrasted emergency treatment with elective treatment and distinguished the earlier Appellate Division cases in <u>Pekler</u> and <u>Kirell</u> on the ground that each involved elective treatment. <u>Id.</u> at 545–46. "In such instances where an individual patient seeks medical care and the care provider is afforded an opportunity to provide[ ] or decline care, the benefit runs entirely to the patient and not an insurer," <u>AA Medical</u>, 2023 WL 5670682, at *5, whereas in emergency cases, "[i]t is precisely because a hospital is required to provide such treatment that 'payment of less than actual costs is unreasonable and, thus, inequitable,' " <u>id.</u> at *4 (quoting <u>Wellcare</u>, 937 N.Y.S.2d at 544).

749 F. Supp. 3d 456, 472–73 (S.D.N.Y. 2024); <u>see also</u> <u>Jay Kripalani M.D., P.C. v. Indep. Blue Cross</u>, No. 23-CV-04225, 2024 WL 4350492, at *7-9 (E.D.N.Y. Sept. 30, 2024) (same).

Defendants also attempt to argue "Plaintiff misrepresents the allegations in the proposed Second Amended Complaint when it states that 'The Claims At Issue All Concern Emergency Services'" because the PSAC states the surgeries were only "in some cases, emergent" and these allegations are conclusory.  (Defs.' Resp. to Objs. at 22-23 (first citing Pl.'s

Objs. at 17; then citing PSAC ¶ 8).)  While the Court agrees with Defendants that Plaintiff has at best misstated, and at worst misrepresented, its position when it included "The Claims At Issue <u>All</u> Concern Emergency Services" in its Objections (Pl.'s Objs. at 17 (emphasis added)), the Court does not agree with Defendants' argument that Plaintiff's allegations in its PSAC, contending "<u>in some cases</u>" United members had emergency surgeries, along with other assertions about emergency services and the plans at issue (<u>see</u> PSAC ¶¶ 8, 35 (emphasis added); <u>see also</u> <u>id.</u> ¶¶ 51-54, 78-80, 93-103), are too conclusory to survive at this stage.  The Court finds these allegations are plausible and should not be dismissed at present.

Thus, upon <u>de novo</u> review, this Court REJECTS Judge Tiscione's seventh recommendation and SUSTAINS this objection.

C. <u>Defendants' Objection</u>

Defendants contend the Magistrate Judge erred in recommending Plaintiff has plausibly alleged a valid assignment of benefits for ERISA standing for plans that do not contain an anti-assignment provision.  (See Defs.' Objs. at 7-13.)  Defendants allege Judge Tiscione's recommendation was incorrect because there is "established precedent in this Circuit confirm[ing] that a valid assignment must do more than give the purported assignee the right to collect or receive money or benefits; a valid assignment must expressly convey ownership of the claim for the money or benefits."

(Id. at 9 (citing Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.a.r.l, 790 F.3d 411 (2d Cir. 2015) (hereinafter, "Cortland Street")).)   Upon de novo review, Defendants' objection is overruled.

First, the primary case Defendants' entire objection hinges on, Cortlandt Street, is not an ERISA case; it is a collection/enforcement action where a corporation, as assignee, was suing issuers and guarantor of subordinated notes for payment of notes and fraudulent conveyance, amongst other causes of action. See Cortlandt Street, 790 F.3d at 414-15.   That differs greatly from the ERISA action at present, especially in light of the Second Circuit's holding in Montefiore Medical Center v. Teamsters Local 272: "We hold that beneficiaries may assign their rights under ERISA § 502(a)(1)(B) to health care providers that have contracted to bill a benefit plan directly, as the beneficiaries did in this case."   642 F.3d 321, 330 (2d Cir. 2011).   Further, while Defendants attempt to categorize the Second Circuit's decision in Montefiore Medical Center as not holding "that an assignment of 'monies and/or benefits' is adequate to create standing," the Court finds this disingenuous, as the Second Circuit's discussion on this issues includes reasoning such as: "arrangements to have one's health care provider reimbursed for the balance of the fee for services" and "even if we assume . . . a provider would continue to provide medical services [] at low or no cost despite an

31

inability to enforce beneficiaries' rights under ERISA . . . beneficiaries arguably would be liable for whatever costs the provider was unable to recover from a benefit plan. . . ." Id.; see also id. ("If provider-assignees cannot [receive a valid assignment so they may] sue the ERISA plan for payment, they will bill the participant or beneficiary directly for the insured medical bills, and the participant or beneficiary will be required to bring suit against the benefit plan when claims go unpaid. On the other hand, if provider-assignees can sue for payment of benefits, an assignment will transfer the burden of bringing suit from plan participants and beneficiaries to providers[,] [who] are better situated and financed to pursue an action for benefits owed for their services. For these reasons, the interests of ERISA plan participants and beneficiaries are better served by allowing provider-assignees to sue ERISA plans." (quoting Cagle v. Bruner, 112 F.3d 1510, 1515 (11th Cir. 1997).) Defendants' reliance on Karkare v. International Associate of Bridge is also inapposite here, because in Karkare, Plaintiff "argued that no assignment was necessary because the power of attorney was sufficient to allow [Plaintiff] to maintain a cause of action under ERISA on behalf of [his patient]." 140 F.4th 60, 62 (2d Cir. 2025). Plaintiff is not arguing that here.

Moreover, regarding Defendants' argument that "Plaintiff's purported assignment is not adequate to convey

32

ownership of the patients' ERISA or breach of contract claims against United," and thus, Plaintiff lacks standing (Defs.' Objs. at 11), this Court does not agree. At this stage, the Court finds Plaintiff has plausibly stated a claim because it is plausible the assignment provision did, in fact, convey ownership. The assignment of benefits at issue reads:

> I hereby assign, transfer and set over to the above named clinical practice [the Practice] sufficient monies and/or benefits to which I may be entitled from government agencies, insurance carrie[r]s, or others who are financially liable for my medical costs of care and treatment rendered to myself or my dependent in said practice. I understand I am responsible for any services not covered by my insurance. I accept responsibility for payment of my account.

(SAC ¶ 63.) The phrase "set over" is used in the first part of this provision, after the words "assign" and "transfer". (See id.) In the legal context, "set over" means: "[t]o assign; transfer ownership of something." Set Over, WIKTIONARY, https://en.wiktionary.org/wiki/set_over#:~:text=English-,Verb,assign;%20transfer%20ownership%20of%20something. (last visited Jan. 20, 2026) (emphasis added); see also Legal Definitions – set over, LSD.LAW, https://lsd.law/define/set-over (last visited Jan. 20, 2026) ("To 'set over' means to legally transfer or convey ownership of property from one party to another. This action effectively assigns the rights and title to the property to the recipient." (emphasis added)); Set Over, Black's Law Dictionary

(12th ed. 2024), <u>available at</u> Westlaw ("[t]o transfer or convey (property)"). Accordingly, Plaintiff's PSAC plausibly alleges a valid assignment.

Therefore, upon *de novo* review, this Court ADOPTS Judge Tiscione's recommendation and OVERRULES this objection.

## CONCLUSION

Accordingly, for the stated reasons, IT IS HEREBY ORDERED that:

I.   Plaintiff's objections (ECF No. 76) are OVERRULED in part and SUSTAINED in part;

II.  Defendants' objection (ECF No. 75) is OVERRULED;

III. The R&R (ECF No. 73) is ADOPTED in part, with Plaintiff's Motion to Amend the Complaint (ECF No. 63) being GRANTED in part, to the extent that:

a. Plaintiff's claim for recovery for plans that do not cover out-of-network services is permitted;

b. Plaintiff's implied-in-law contract claim is dismissed;

c. Plaintiff's implied-in-fact contract claim is dismissed;

d. Plaintiff's First Cause of Action in its PSAC is permitted, except for those seven plans containing anti-assignment provisions that include prohibitive clauses or personal rights clauses;

34

e. Plaintiff's thirty-one claims arising under the MA Plans cannot be pled;

f. Plaintiff's claim for unjust enrichment against ERISA-governed plans is preempted and cannot be pled;

g. Plaintiff's breach of contract claim is permitted, but only as to plans that: (1) are not governed by ERISA or MA; and (2) do not contain an anti-assignment clause; and

h. Plaintiff's claim for unjust enrichment is permitted as to claims that concern emergency services.

IV. Plaintiff shall file its Second Amended Complaint, in accordance with the foregoing, no later than February 4, 2026.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: January 20, 2026
       Central Islip, New York